

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CRIMINAL NO. *A-11-m-401* |
| LANCE DOMONIC ROBINSON, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Tracy L. Steed, Special Agent, United States Secret Service, Austin, Texas, being duly sworn, depose and state the following:

1.     I am a Special Agent of the United States Secret Service and have been so employed for 12 years.  I am currently assigned to the Austin, Texas, Resident Office of the United States Secret Service.   In this capacity, I have received extensive training and have experience in conducting financial crimes and fraud investigations to include access device fraud, bank fraud, mail fraud, wire fraud, computer fraud, and false identification crimes.  My duties and responsibilities include investigation of alleged violations of federal criminal laws involving fraud in connection with computers, identification information, access devices, and counterfeiting of United States currency.

2.     I respectfully submit this affidavit in support of the Government's application in

support of a Criminal Complaint against LANCE DOMONIC ROBINSON for violations of Title 18 United States Code, Section 1029(a)(5) and (b)(1) (Access Device Fraud).

3.     Title 18, United States Code, §1029(a)( 5) provides that "whoever knowingly and with intent to defraud effects transactions, with one or more access devices issued to another person or persons, to receive payment or any other thing of value during any one year period, the aggregate value of which is equal to or greater than $1,000 shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section." §1029(c)(1)(A)(ii) provides that the maximum term of imprisonment for such a violation is fifteen years. Title 18, United States Code, 1029(b)(1) provides that attempts to commit an offense under subsection (a) of the section shall be subject to the same penalties as those prescribed for the offense attempted.

4.     The information set forth in this affidavit is based upon my investigation and on information provided by other law enforcement officers to me based upon their investigation. A portion of the investigation was conducted by Austin Police Department Detective Matt Conley, a member of the Central Texas Financial Crimes Task Force, working with several Austin Police Department patrol officers and employees.

## The Offense

5.     On March 27, 2011, LANCE DOMINIC ROBINSON appeared in the Apple retail store located in Barton Creek Mall, 2901 South Capital of Texas Highway, Austin, Texas to purchase Apple computers and services. An Apple employee, Christian Devoe, approached ROBINSON when he entered and the store and ROBINSON, (representing himself falsely to Devoe as "John Kelly") said he was moving to the area from Atlanta and had a small family

business with his mom and sister. "John Kelly" told Devoe, in sum, that he needed to purchase

some computers for that business and that he had a $10,000 credit limit on his MasterCard. In

connection with the purchase, ROBINSON presented to Devoe a SunTrust MasterCard

debit/check card, in the name of "John R. Kelly II", and a Mississippi Driver's license that bore

his photograph and the name "John Kelly" to complete the purchase of three computers and

training services related to the computers in the total amount of $9188.75. Devoe swiped the

MasterCard, but the transaction was declined.   ROBINSON then told Devoe, in sum, that he'd

get his bank on the phone to get it straightened out. A few moments later, ROBINSON (still

posing as "John Kelly'') handed his cell phone to Devoe in order to permit Devoe to speak to his

bank. Devoe spoke to a man on the phone who told Devoe he was with SunTrust Bank. The

man asked Devoe to verify the purchaser's driver's license number and the last four digits of his

social security number. Devoe read the numbers from the Mississippi Driver's license to the

man on the phone. ROBINSON also provided the last four digits of a social security number to

Devoe who then provided that information to the man on the phone. The man on the phone

advised Devoe that he had verified the customer's identity and stated the employee could proceed

with the sale of the Apple computers to ROBINSON. The man on the phone then provided

Devoe with instructions about how to process the transaction to insure it would be approved,

despite the earlier declination. Devoe followed the instructions provided by the man and the

purchase was, in fact, approved at the point of sale terminal. ROBINSON electronically signed

the signature box for the sale as "John Kelly" and left the store with three computers worth well

over $1000.00. Devoe learned a few days later from his business manager that the SunTrust

Bank MasterCard debit/check card in the name of "John R. Kelly II" had been used fraudulently

by ROBINSON.

6.     On or about May 1, 2011, ROBINSON entered the Apple retail store located inside Barton Creek Mall, 2901 South Capital of Texas Highway, Austin, Texas.  ROBINSON once again arranged to purchase three (3) Apple MacBook Pros ($2,799.99 each) and presented to an Apple Employee (Employee 2) a SunTrust Bank MasterCard debit/check card bearing the name "John R. Kelly II."  When asked by an Employee 2 for his photo ID to proceed with the purchase, ROBINSON presented a Mississippi Driver's License bearing his photograph and the name "John Kelly" that matched up with the name on the SunTrust Bank MasterCard.

7.     As this attempted purchase was underway, Devoe overheard the conversation between ROBINSON and Apple Employee 2.  Devoe recognized ROBINSON from his March 27, 2011 fraudulent purchase of computers at this Apple store.  Devoe brought ROBINSON to the attention of his manager.  Apple employees stalled ROBINSON while the Austin Police Department was contacted.  Austin police officers responded to the Apple store and made contact with ROBINSON who was still in the Apple retail store.

8.     LANCE DOMONIC ROBINSON identified himself to Austin police officers as "John Kelly" and presented a Mississippi Driver's License in the name of "John Kelly."  While in the Apple Store, Austin police officers confirmed that there were outstanding warrants issued out of Atlanta, Georgia for forgery, driving without a driver's license, and failure to stop at a stop sign under the name of "John Kelly."   The police officers contacted Austin Police Detective Matt Conley who is a member of the United States Secret Service Central Texas Financial Crimes Task Force (CTFCTF), and asked if additional charges could be filed against ROBINSON for credit card abuse.

9.      Continuing on or about May, 1, 2011, ROBINSON was arrested pursuant to the Georgia warrants and for credit card abuse in violation of Texas law.  Once in custody, Austin police officers obtained fingerprints from ROBINSON and confirmed his true name as LANCE DOMINC ROBINSON.  Austin police officers located ROBINSON'S Hertz rental car (2011 Gray Honda Accord, Georgia Tag #BDD6938) in the mall parking lot and impounded it pursuant to his arrest.  While conducting an inventory search of the vehicle, seven (7) new Apple MacBook Pro computers were located (still sealed in boxes) in the trunk with a retail value of $19,593.00.  Also found in the vehicle were several Western Union Wire Transfers receipts in numerous names.  These items were seized.

10.      On or about May 2, 2011, Detective Conley discovered with the cooperation of loss prevention investigators at Apple, Inc. and SunTrust Bank that the seven (7) computers found in ROBINSON'S rental vehicle had been recently purchased at two other Apple store locations in Dallas, Texas and Fort Worth, Texas using the same stolen SunTrust Bank debit/check card and Mississippi driver's license in the name of "John Kelly."  Apple investigators informed Detective Conley that, based on their investigation of Apple records, between January, 2008 and May, 2011, ROBINSON had appeared in various Apple stores across the United States.  The Apple investigators discovered that ROBINSON used the same SunTrust MasterCard debit/check card in the name of "John R. Kelly II" and Mississippi driver's license used in Austin to fraudulently purchase a total of approximately $147,000 in Apple computer equipment in various states.  According to Apple investigators, in sum, the John R. Kelly II SunTrust MasterCard debit/check card was successfully used by ROBINSON to make approximately twenty (20) fraudulent computer purchases in Apple stores located in Texas,

Georgia, Ohio, Louisiana, Virginia, Missouri and Florida.

11.     On or about May 3, 2011, Detective Conley contacted the actual John Kelly in

Atlanta Georgia who advised that the SunTrust Bank MasterCard was linked to a new home

construction loan disbursement account at SunTrust and that he had cancelled this card back in

October of 2010 due to fraudulent charges showing up on the card.  Kelly advised Detective

Conley that he thought that he had destroyed and disposed of the cards when they were done

building their home, but he could have been mistaken and accidentally kept them around or

thrown them away possibly without destroying them.  Kelly stated he just could not be 100

percent certain that he destroyed the cards.  Kelly said that he later became aware of fraudulent

charges from Apple stores in January of 2011.  Kelly does not know LANCE DOMONIC

ROBINSON and did not give him permission to possess or use his SunTrust MasterCard or any

of his personal identifying information, including his name and SunTrust MasterCard account

number.

12.     Continuing on or about May 3, 2011, your affiant and Detective Conley went to

the Travis County Jail where we conducted an interview with LANCE DOMONIC

ROBINSON. Your affiant advised ROBINSON of his *Miranda* rights and

Robinson signed the *Miranda* waiver form, acknowledging that he understood and waived his

rights.  During the course of the interview, ROBINSON advised that he got involved in the

criminal scheme set forth above by posting an ad on the Craigslist internet site in Atlanta,

Georgia in order to sell a Sony laptop computer that he had recently "acquired."  ROBINSON

said that in the ad, he had included his phone number and a man contacted him regarding the

laptop and stated that he wanted to purchase it.  When ROBINSON met with the man, the man

asked ROBINSON if he could get any more laptops like this.  ROBINSON advised the man that

he could not, and the man then asked ROBINSON if he'd like to get involved in something that

could make him a lot of money.  ROBINSON stated that the man first identified himself as "John

Kelly", but later told ROBINSON that he could call him "Charles."  ROBINSON claimed that

"Charles" said that he had a computer business in Argentina and needed to get computers in

order to sell them through his Argentina business.

13.    ROBINSON further advised your affiant and Detective Conley, in sum, that he

agreed to participate in the criminal scheme and that "Charles" took him to a Walgreen's location

in Atlanta, Georgia and had a passport photo taken of ROBINSON.  ROBINSON stated that

"Charles" took the passport photos and made (or had someone else make) ROBINSON two

counterfeit driver's licenses bearing his photograph, but identifying him as "John Kelly."

ROBINSON said that one license was a Mississippi License (the one seized), and one was from

another state (he thinks it was North Carolina). "Charles" then gave ROBINSON the SunTrust

MasterCard bearing the name "John R. Kelly II."

14.    Robinson further stated that "Charles" instructed him on how to go to the Apple

Stores and what story to tell, and what phone number he was to call when calling "SunTrust

Bank."  ROBINSON stated that "Charles" gave him a portable GPS device and provided him

with funds to rent a vehicle.  Robinson said that he was unable to rent a vehicle himself since he

only had a Georgia identification card and not a driver's license.  Due to that fact, ROBINSON

stated he asked his cousin, Marcelli Hill, to rent a vehicle for him, which she did.  "Charles" gave

ROBINSON cash money to pay for the rental and to subsequently extend the lease a number of

times. ROBINSON would then be given a series of Apple Store locations by "Charles" with instructions to buy certain Apple computer products.

15.    ROBINSON stated he would then drive to various locations as instructed and rent a hotel room. ROBINSON stated that he would go to the Apple Stores as instructed and give the story that he was moving to the State he was in at the time with his mother to open a business and that the computers were for that business. ROBINSON related, in sum, that he would tell the Apple employee that he previously had trouble with his debit/check card declining and would give the card to the employee. The card would then decline, just as he had warned the employee it would, and ROBINSON stated he would provide the counterfeit driver's license to the Apple employee as proof of his identity as "John Kelly" when giving them the SunTrust MasterCard so that the identification would match the name on the card. ROBINSON stated he would then call the number that "Charles" had given him and either "Charles" or an unknown female would answer the phone as "SunTrust Bank." ROBINSON stated he would then inform the Apple employee that his bank was on the phone and then the employee would then be told that the card was good and given instructions on how to proceed with the transaction so that it would be approved at the point of sale terminal. Once the sale was approved, ROBINSON would leave the store with the computers in hand.

16.    ROBINSON further stated that once he had visited two or three Apples stores during a trip, he would then travel back to Atlanta, Georgia where he would meet with "Charles" to drop off the computers. According to ROBINSON, "Charles" would then pay him $1,000 cash per store (if he went to three stores during that trip, he'd receive $3,000, etc.). Robinson said that the cash he received from "Charles" was always bundled or "strapped" like it came straight

from a bank. ROBINSON stated he would always meet "Charles" in a parking lot adjacent to "Midtown Plaza", which ROBINSON described as a hi-rise condo building that was very expensive to live in. ROBINSON said that he had also met "Charles" in the parking lot of an "L.A. Fitness" gym close to "Mid-Town Plaza" to drop off computers. ROBINSON said that over the course of his participation in this criminal operation, that he had seen at least four (4) other individuals also dropping off Apple and Sony computers to "Charles" in the same manner. ROBINSON also stated that he once observed someone dropping off a "truck load" of computers to "Charles" in a small box truck, similar to a U-Haul type truck. ROBINSON commented that he had asked "Charles" how he could get involved in something like that (a little more large-scale) and "Charles" told him that he wasn't ready for that yet. ROBINSON gave a description of "Charles" to Detective Conley and your affiant.

17.     During the interview, Detective Conley read the information provided by the Apple investigators regarding the twenty (20) fraudulent transactions that were committed in various Apple stores throughout the United States between January, 2011 and May 1, 2011 which involved the SunTrust MasterCard in the name of "John R. Kelly II" and the counterfeit identification in the name of "John Kelly." ROBINSON admitted to Detective Conley and your affiant that he began the criminal scheme in or about January, 2011 and continued this criminal scheme until he was arrested on May 1, 2011. ROBINSON admitted to all twenty (20) fraudulent transactions that involved the name of "John Kelly."

Based on the foregoing facts, there is probable cause to believe that LANCE DOMONIC ROBINSON committed and/or attempted to commit one or more offenses in violation of Title 18, United States Code, Section 1029(a)(5) (Access Device Fraud).

FURTHER AFFIANT SAYETH NAUGHT.

_____
Tracy L. Steed
Special Agent
United States Secret Service
Austin, Texas

Subscribed and sworn to before me at Austin, Texas, on this ___ day of May, 2010.

_____
UNITED STATES MAGISTRATE JUDGE